UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHELLEY ANN SANGURAS,<br><br>                Plaintiff,<br><br>         v.<br><br>KILOLO KIJAKAZI, acting<br>Commissioner of Social Security,<br><br>                Defendant. | No. 1:22-cv-00834-GSA<br><br>**OPINION & ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF**<br><br>**(Doc. 12, 14)** |

**I.     Introduction**

Plaintiff Shelley Ann Sanguras ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability insurance benefits pursuant to Title II of the Social Security Act. The matter is before the Court on the parties' briefs which were submitted without oral argument to the United States Magistrate Judge.[1]  Docs. 12,14. After reviewing the record the Court finds that substantial evidence and applicable law support the ALJ's decision.

**II.     Factual and Procedural Background[2]**

On August 31, 2015 Plaintiff applied for disability insurance benefits which was denied at each level of the review by the Commissioner, appealed to this Court, remanded for further proceedings pursuant to this Court's decision[3] and then denied a second time by the Commissioner

---

[1] The parties consented to the jurisdiction of a United States Magistrate Judge. *See* Docs. 5 and 7.

[2] The Court has reviewed the relevant portions of the administrative record including the medical, opinion and testimonial evidence about which the parties are well informed, which will not be exhaustively summarized. Relevant portions will be referenced in the course of the analysis below when relevant to the parties' arguments.

[3] The prior case (19-cv-01036-JLT) was decided by then Magistrate Judge Jennifer Thurston, who has since been elevated to District Judge receiving her commission on December 27, 2021, prior to the date the current case was filed on July 7, 2022. Though this case would have potentially qualified for a related case transfer under Local Rule 123 (involving similar questions of law and fact), the parties did not pursue that avenue as there was no option to pursue a related case transfer to Judge Thurston while also opting into the jurisdiction of a Magistrate Judge and the expedited decision-making timeline.

resulting in the current complaint.

### III. **The Disability Standard**

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted).

When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and quotations omitted). If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate non-disability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-

(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. § 416.920(a)-(f). While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

### IV. The ALJ's Decision

At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of March 7, 2014 through her date last insured of December 31, 2019. AR 1002. At step two the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine status post-surgery, and osteoarthritis of the left knee. AR 1003. The ALJ also found at step two that Plaintiff had the following non-severe impairments: depression, anxiety, glaucoma, and migraines. AR 1003–05. At step three the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 1005–06.

Prior to step four the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform less than the full range of sedentary work as defined in 20 C.F.R. 404.1567(a), with various postural restrictions and no exposure to temperature extremes. AR 1006–1011.

At step four the ALJ found that Plaintiff could not perform her past relevant work as registered nurse ("RN") (medium exertional level, heavy as performed (DOT 075.364-010)). AR

3

1011. At step five, in reliance on the Vocational Expert's (VE's) testimony, the ALJ found that Plaintiff could perform other jobs existing in significant numbers in the national economy to which her skills acquired as a RN would transfer, namely: medical clerk (DOT 205.362-018) and medical billing clerk (DOT 214.482-018). AR 1012. Accordingly, the ALJ found that Plaintiff was not disabled at any time from March 7, 2014, the alleged onset date, through December 31, 2019, the date last insured. *Id*.

## V.      Issues Presented

Plaintiff asserts one claims of error: that the ALJ erroneously relied on the VE's testimony at step five that the skills Plaintiff acquired as an RN would transfer to the jobs of medical clerk ("Hospital Admitting Clerk" - DOT 205.362-018) or medical billing clerk ("Medical Voucher Clerk (insurance)) DOT 214.482-018).

### A.      Skill Transferability at Step Five

#### 1.      Applicable Law

Occupations are classified as "unskilled," "semiskilled," or "skilled." 20 C.F.R. § 404.1568. Unskilled work involves non-complex tasks that can be learned on the job in 30 days or less. *See* § 404.1568(a); SSR 82-411, 1982 WL 31389 at *2 (Jan. 1, 1982). "Semiskilled occupations" are "distinctly simpler than the more highly skilled type of jobs" but still "contain more variables and require more judgment than do unskilled occupations." SSR 82-41, 1982 WL 31389 at *2; *see also* 20 C.F.R. § 404.1568(b) ). Skilled work is the most complex, requiring "judgment to determine the machine and manual operations to be performed in order to obtain the proper form, quality, or quantity of material to be produce." Id. § 404.1568(c).

If a claimant cannot perform past relevant work "and that work has been determined to be skilled or semiskilled," the ALJ must consider whether the skills acquired are transferable to a new job. SSR 82-41, 1982 WL 31389 at *1. "A skill is knowledge of a work activity which requires the exercise of significant judgment that goes beyond the carrying out of simple job duties and is

acquired through performance of an occupation which is above the unskilled level." SSR 82-41, 1982 WL 31389 at *2.

The likelihood that a skill is transferable to a new job depends on three factors: "(1) the new job requires the same or a lesser degree of skill than the old job; (2) the same or similar tools and machines are used in both jobs; and (3) the same or similar raw materials, products, processes, or services are involved in both jobs." *Aldrich v. Barnhart*, 151 F. App'x 561, 562 (9th Cir. 2005) (citing 20 C.F.R. § 404.1568(d)(2)(i)-(iii).

"A complete similarity of all three factors is not necessary for transferability." 404.1568(d)(3).

A distinct transferability rule applies to individuals of advanced age, as set forth in section 404.1568(d)(4):

> (4) Transferability of skills for persons of advanced age. If you are of advanced age (age 55 or older) . . . and you have a severe impairment(s) that limits you to no more than sedentary work, we will find that you have skills that are transferable to skilled or semiskilled sedentary work only if the sedentary work is so similar to your previous work that you would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry.

20 C.F.R. 404.1568(d)(4).

Pursuant to SSR 00-4p:

> Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.
>
> Neither the DOT nor the VE or VS evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information.

## 2. **Analysis**

In the prior case, the Court found the ALJ failed to support the step five finding that as an RN Plaintiff acquired the skills of "lifting patients" and "moving equipment," skills which would transfer to the jobs of medical clerk and medical billing clerk. AR 1118 (19-cv-01036-JLT). The Court explained that the ALJ gleaned those "skills" from the testimony about the exertional activities of an RN, which did not constitute transferrable skills particularly given that the exertional requirements of the RN position were medium to heavy, while the jobs to which Plaintiff's skills were allegedly transferred were sedentary. *Id.*

Neither party addressed the reasoning for the remand in the prior case, or the ALJ's compliance with the instructions on remand. Here, as instructed by the order of remand (and as was already required by the applicable law cited above), the ALJ did elicit and incorporate the VE's testimony as to the skills that would transfer to the jobs of medical clerk (DOT 205.362-018) and medical billing clerk (DOT 214.482-018). AR 1046. The VE identified the following skills: medical and healthcare knowledge, background in medical terminology, knowledge of nursing care, patient/hospital skills, knowledge of equipment and aids for treatment. AR 1011 (citing AR 1046). Plaintiff nevertheless contends she acquired no transferable skills under the factors set forth in 20 C.F.R. § 404.1568(d), though for reasons not relevant to the prior order of remand or the ALJ's compliance therewith.

The first factor under 20 C.F.R. § 404.1568(d)(2) ("the new job requires the same or a lesser degree of skill than the old job") favors a transferability finding. Plaintiff's past work as a RN has a Specific Vocational Preparation (SVP) of 7, whereas the other two jobs have SVPs of 4 and 3. Skilled jobs range from SVP 5 to 9, whereas semi-skilled jobs range from SVP 3 to SVP 4, and unskilled jobs range from SVP 1 to 2  POMS DI 25015.017. Thus, the latter two jobs require a lesser degree of skill. *See Aldrich v. Barnhart*, 151 F. App'x 561, 562–63 (9th Cir. 2005) ("The credit clerk and mortgage clerk

positions would not require Aldrich to use a greater degree of skill than jobs that she has previously held. A credit clerk is an SVP4 position, and a mortgage clerk is an SVP5 position.").

As to the second and third factors, after quoting the applicable law set forth above, Plaintiff begins a long discussion which cannot be readily paraphrased:

> In studying ways in which to revise the outdated Dictionary of Occupational Titles, 4th ed. rev. (Dept. of Labor 1991), the Commissioner set out a blue-ribbon panel to explore the baseline established by the DOT. Soc. Sec. Admin., Occupational Information Development Advisory Panel. 73 Fed. Reg. 78,864[4] (Dec 23, 2008). In September 2009, the advisory panel issued a report outlining the inadequacies of the DOT. See Occupational Information Development Advisory Panel, Soc. Sec. Admin., Content Model and Classification Recommendations for the Soc. Sec. Admin. Occupational Information Sys. (Sept. 2009) (Content Model). The Committee issued significant reports by subcommittee. One of the appendixes concerned the subject of work experience. Report of the Work Experience Analysis Subcommittee, pages D-12; D-21 to D-22; D-42; and D-43.
>
> The subcommittee stated that the "experts unanimously agree that the current SSA definition for TSA (transferability of skills analysis) found in the CFR is comprehensive and remains useful." Id. at page D-43. In restating the three criteria for assessing transferability, the subcommittee parenthetically noted the DOT counterpart for the data point. The same or less degree of skill refers to SVP (specific vocational preparation). The same or similar tools and machines refers to work fields. The same or similar raw materials, products, processes, or services refers to MPSMS (materials, products, subject matter, and services). Id. Use of SVP, work fields, and MPSMS codes is the acceptable methodology. This methodology conforms to the methodology recognized by the OIDAP. Generally transferable, directly related occupations, and generally related occupations involve new skills that would not fit within the regulatory requirement to "meet" the requirements of other work. 20 C.F.R. § 404.1568(d)(1). The Commissioner also describes the discrete steps in performing a transferability of skills analysis in the Program Operations Manual System (POMS). POMS DI 25015.017.
>
> With an understanding of how the Commissioner instructs the Social Security Administration to determine the issue of transferable skills, a review of the DOT in this matter demonstrates the legal error of the ALJ.

Br. at 7-8, Doc. 12.

Plaintiff then compares the Work Fields and MPSMS classifications of the three jobs in question and displays the comparison in a table as follows:

---

[4] The correct citation is actually 73 FR 78864-01.

|  | Work Field | MPSMS | Industry | DOT | SVP |
|---|---|---|---|---|---|
| Registered Nurse | 294 – Health caring-medical | 924 – Nursing, Dietetic, and Therapeutic Services | Medical Services | 075.364-010 | 7 |
| Medical Clerk | 231 – verbal recording-record keeping and 282 – information giving | 890 – General, Business, Finance, Insurance, and Real Estate Services and 929 - Medical and Other Services | Medical Services | 205.362-018 | 4 |
| Medical Billing Clerk | 232 – numerical recording-recordkeeping | 892 – Accounting, Auditing, and Bookkeeping Services | Insurance | 214.482-018 | 3 |

Plaintiff observes that, "It is clear that no match is made in the DOT between the occupations and work fields and materials, products, subject matter, and services (MPSMS) codes." *Id.* at 11. Plaintiff concludes that "The vocational testimony and the ALJ's acceptance of it is legal error." *Id.*

The argument is not compelling. As noted above, there are three factors under the transferability analysis which affect the likelihood of skill transferability, but "a complete similarity of all three factors is not necessary for transferability." 20 C.F.R. § 404.1568(d)(2).

Second, Plaintiff's focus on the second and third factors is a bit indirect. Plaintiff's discussion of the history behind the transferability analysis, along with the Commissioner's "blue-ribbon panel" set out in 2008, and the subcommittee's relevant findings are all interesting pieces of background information, but are neither essential nor sufficient to establish legal error despite Plaintiff's suggestion to the contrary.

Plaintiff cites no caselaw from any jurisdiction at any level of review analyzing Work Fields or MPSMS as relevant or dispositive components of the transferability analysis, nor any caselaw requiring continuity between the Work Fields and MPSMS codes for the past relevant work and the work to which the claimant's skills allegedly transfer. Further, the regulation addressing the transferability analysis, 20 C.F.R. § 404.1568(d), makes no mention of Work Fields or MPSMS codes.

Westlaw reflects 4,136 citing references (cases) to the regulation governing the transferability analysis (20 C.F.R. § 404.1568), only 29 of which mention "work field" or "MPSMS." Those 29 cases include only 3 cases within this district, 2 of which involved Plaintiff's current counsel of record unsuccessfully advancing the same argument advanced here. *See Hartley v. Colvin*, No. 2:13-CV-1863 AC, 2014 WL 6058652, at *4 (E.D. Cal. Nov. 12, 2014); *Garcia v. Astrue*, No. 1:11-CV-00774-SKO, 2012 WL 4091847, at *7 (E.D. Cal. Sept. 17, 2012) ("Plaintiff provides no legal authority to support his contention that the VE must rely on the MPSMS and that the census code identified by the DOT is not sufficient. The only legal authority that this Court could find that referred to the MPSMS was an unpublished Ninth Circuit memorandum decision that rejected the plaintiff's argument as 'non-persuasive' that 'her skills are not transferable because the alternate work positions suggested by the ALJ are not found under the same work file number or Material, Products, Subject Matter, and Services number as her prior position of Shipping and Receiving Clerk in the Dictionary of Occupational Titles.' No other Ninth Circuit or district court case relies upon, or even cites, Plaintiff's purported 'only responsible methodology theory.'") (quoting *Thompson v. Barnhart*, 148 F. App'x 634, 635 (9th Cir. 2005)).

As to the second and third regulatory factors (the same or similar tools, machines, products, processes, materials, and services), Plaintiff also contends that the lack of overlap between the jobs is borne out in the DOT job descriptions. Br. at 11. The descriptions are as follows:

Registered Nurse:

> Provides general nursing care to patients in hospital, nursing home, infirmary, or similar health care facility: Administers prescribed medications and treatments in accordance with approved nursing techniques. Prepares equipment and aids physician during treatments and examinations of patients. Observes patient, records significant conditions and reactions, and notifies supervisor or physician of patient's condition and reaction to drugs, treatments, and significant incidents. Takes temperature, pulse, blood pressure, and other vital signs to detect deviations from normal and assess condition of patient.

DOT 075.364-010

Hospital-Admitting Clerk:

> Interviews incoming patient or representative and enters information required for admission into computer: Interviews patient or representative to obtain and record name, address, age, religion, persons to notify in case of emergency, attending physician, and individual or insurance company responsible for payment of bill. Explains hospital regulations, such as visiting bours, payment of accounts, and schedule of charges. Escorts patient or arranges for escort to assigned room or ward. Enters patient admitting information into computer and routes printed copy to designated department. Obtains signed statement from patient to protect hospital's interests

DOT 205.362-018

Medical Voucher Clerk

> Examines vouchers forwarded to insurance carrier by doctors who have made medical examinations of insurance applicants, and approves vouchers for payment, based on standard rates. Computes fees for multiple examinations, using adding machine. Notes fee on form and forwards forms and vouchers to appropriate personnel for further approval and payment

DOT 214.482-018

Plaintiff contends these jobs describe "radically different skill sets." The differences are reasonably apparent in that an RN is primarily engaged in patient care whereas the other two jobs are more clerical in nature. As to the comparison between RN and Medical Voucher Clerk, Plaintiff's contention is well taken that the DOT describes radically different skill sets. The latter is not even in the same industry and does not involve work at a hospital, doctor's office, or other treating provider, but rather involves work for the insurance carrier.

The overlap between RN and medical clerk (Hospital Admitting Clerk) is not entirely insignificant, however. They both are in the medical services industry, involve interacting with patients,

10

obtaining information and recording it. Additionally, the ALJ asked the VE to identify the skills that would transfer, and the VE testified:

> Okay. So let me pull the registered nurse. All right. So as far as transferability of skills -- just a second. All right. So skills and competencies that are transferable are going to be the medical and healthcare knowledge -- and I'm sorry. I've lost my page Let's see here. So background in medical terminology, knowledge of nursing care and patient, hospital skills, knowledge of equipment and the aids that have to do with the treatment of the patients. And those are just some of them.

AR 1046.

This explanation is clearly only relevant to the jobs of RN and Hospital Admitting Clerk (which the VE referenced as "medical clerk."). Again, the DOT description of Medical Voucher Clerk (which the VE referred to as "medical billing clerk") quoted above involves none of the skills the VE referenced; it involves processing insurance claims. Overall, this was not an overwhelmingly specific or persuasive explanation by the VE.

Considering the purpose for the remand was for the ALJ to question the VE about skill transferability, the ALJ could have pressed the VE further about the nature of the skills he was referring to by "patient, hospital skills." Further, the VE closed the testimony about transferable skills by stating "and those are just some of them," possibly assuming the VE had more to share.

Nevertheless, Plaintiff does not address the content of the VE's testimony, but rather argues categorically that "the mere *ipse dixit* of the vocational expert cannot constitute substantial evidence to support the ALJ's non-disability finding." Br. at 11. Plaintiff misconstrues the Commissioner's burden at step five. A "vocational expert's testimony itself constitutes substantial evidence to support the ALJ's vocational finding regarding transferability of skills." *Didinger v. Comm'r of Soc. Sec.*, No. 2:17-CV-1320-DMC, 2019 WL 112986, at *16 (E.D. Cal. Jan. 4, 2019) (citing *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) ("A [vocational expert's] recognized expertise provides the necessary foundation for his or her testimony")). Here the VE did identify the transferable skill in question, and the ALJ incorporated the testimony in her decision. Absent an apparent conflict between such testimony and the

DOT, the VE's *ipse dixit* does indeed constitute substantial evidence to support a non-disability finding. *Id.*

Plaintiff quoted the VE's explanation in the section of her brief labelled "Summary of the Relevant Testimony" (Br. at 5), but never came back to it in her argument section, or attempted to explain why she believes it was deficient or non-compliant with the Court's directive on remand. The impetus was on Plaintiff, not the Court, to explain why the VE's testimony was deficient. *See Greenwood v. Fed. Aviation Admin.*, 28 F.3d 971, 977 (9th Cir. 1994) ("We will not manufacture arguments for an appellant, and a bare assertion does not preserve a claim . . .") (citation omitted). Rather, Plaintiff argued that the lack of overlap in the Work Field and MPSMS classifications for RN and the two jobs in question establishes the ALJ's error. As explained above, Plaintiff identifies no authority to support that theory. And, despite the differences in the DOT job descriptions quoted above for Registered Nurse and Hospital Admitting Clerk, the descriptions were not so divergent as to create an apparent conflict with the VE's testimony that skills acquired in the former were transferrable to the latter.

Finally, Plaintiff contends in passing at the close of her brief that the transferability finding here was erroneous because "more than very little, if any, vocational adjustment (would be) required in terms of tools, work processes, work settings, or the industry." Br. at 13. Plaintiff cites and invokes the language of a subsection that sets forth a distinct transferability rule for persons of advanced age, the full text of which reads as follows:

> Transferability of skills for persons of advanced age. If you are of advanced age (age 55 or older) . . . and you have a severe impairment(s) that limits you to no more than sedentary work, we will find that you have skills that are transferable to skilled or semiskilled sedentary work only if the sedentary work is so similar to your previous work that you would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry.
> 20 C.F.R. 404.1568(d)(4)

The ALJ did appear to flag a potential issue regarding the above subsection, and inquired of the VE who testified that, "I think that they (the other two jobs) would fall into the minimal vocational adjustment category." AR 1047. The ALJ recited this without elaboration as the last sentence of the step five finding: "the vocational expert testified that no more than minimal adjustment was required." AR 1012. It does not appear that the above-quoted subsection was brought to bear on the ALJ's decision, however, given the ALJ's discussion about the claimant's age category, discussion which was admittedly a bit confusing:

> The claimant was born on June 24, 1966 and was 53 years old, which is defined as a younger individual age 45-49, on the date last insured. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563).

AR 1011.

Plaintiff was not simultaneously 53 years old and also between 45-49 years old. As of the alleged disability onset date of March 7, 2014, Plaintiff was a "younger individual" at age 47. As of her date last insured of December 31, 2019, Plaintiff was 53 years old, meaning her age category changed to "closely approaching advanced age." The distinct transferability rule quoted above does not apply to a "younger individual" (age 45-49), nor does it apply to an individual "closely approaching advanced age" (age 50-54). It applies to an individual "of advanced age" (55 or older).

Notably, Plaintiff was indeed 55 *as of the ALJ's decision* on November 1, 2021, a relevant fact under the Commissioner's Borderline Age Policy:

> When you evaluate a claimant's ability to adjust to other work, a borderline age situation exists if:
>
> 1. The claimant reached or will reach the next higher age category within a few days to a few months after the:
>     • *date of adjudication*;
>     • date the Title II insured status expired (date last insured);
>     • end of disabled widow(er)'s benefit (DWB) prescribed period;
>     • end of childhood disability benefit (CDB) reentitlement period; *or*
>     • cessation of disability; *and*
>
> 2. Both of the following are true:

• Using the claimant's chronological age results in a not disabled determination; and
• Using the next higher age category to adjudicate the borderline period results in a disabled determination.

POMS DI 25015.006.

In other words, if the individual would otherwise be found disabled but for her age, and she is within a "few months" (meaning "a period not to exceed 6 months") of the next age category, the Commissioner's Borderline Age policy directs that the adjudicator should "consider" using the higher age category. *Id.* Here, the ALJ used Plaintiff's "date last insured" as the operative date from which to calculate Plaintiff's age. However, in listing five potential operative dates that arise in social security cases (including "date of adjudication"), the Commissioner's use of the disjunctive "or" suggests that a borderline age situation arises if the claimant's age category changes within 6 months of any of the five potential operative dates.

Of course, not all five potential operative dates exist in each case (e.g., "disabled widower's benefit prescribed period"). But, at a minimum, each case does necessarily have a "date of adjudication" as well as an additional potential operative date specific to the nature of the claim, as in the case of disability insurance benefits pursuant to Title II of Act, the eligibility for which depends on insured status and the determination of a "date last insured." Had the Commissioner only listed the claim-specific potential operative dates, the use of the disjunctive "or" would have no significance, the adjudicator would simply use the operative date that pertains to the type of claim, be it widowers benefits, childhood disability, etc. The fact that the Commissioner also listed "date of adjudication" as the first potential operative date for the purposes of age calculation suggests a claimant-friendly policy of over-inclusion, not under inclusion, with respect to individuals approaching a new age category. In short, the ALJ's use of the date last insured here as the operative date for the purpose of calculating Plaintiff's age (as opposed to the date of adjudication) was not in keeping with the Commissioner's Borderline Age Policy.

Nevertheless, agency policy set forth in the Program Operations Manual System ("POMS") "does not impose judicially enforceable duties on either [the] court or the ALJ." *Carillo-Yeras*, 671 F.3d 731, 735 (9th Cir. 2011); see also *Lockwood v. Comm'r*, 616 F.3d 1068, 1073 (9th Cir. 2010) ("POMS does not impose judicially enforceable duties on the SSA"); *Durden v. Colvin*, 549 Fed. App'x 690, 690-91 (9th Cir. 2013) ("the POMS does not have the force and effect of law and, thus, does not impose judicially enforceable duties on the ALJ").

Further, the Court has no obligation to advance Plaintiff's argument regarding the applicability of the subsection governing transferability for individuals of advanced age (20 C.F.R. 404.1568(d)(4), and its attendant requirement that the job to which the claimant's skills transfer be "so similar to your previous work that you would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry."

The ALJ did not apply that subsection given Plaintiff was only 53 as of the date last insured. Again, in doing so the ALJ seemingly disregarded the Commissioner's Borderline Age Policy. Further, applying the "very little, if any, vocational adjustment" standard could easily have justified a different outcome when determining whether the transferable skills identified by the VE would facilitate such a seamless vocational adjustment as required by 20 C.F.R. 404.1568(d)(4). But for the reasons mentioned, the Court cannot remand on that basis and instruct the ALJ to apply that subsection in keeping with the Commissioner's Borderline Age Policy. Plaintiff's use of the "very little, if any, vocational adjustment" language at the close of her brief, and citation to the relevant subsection, is not tantamount to an argument that the subsection in question should apply along with the more rigorous transferability standard.

Applying the three factor transferable skills analysis set forth at 20 C.F.R. 404.1568(d)(2), given that Plaintiff's work as an RN was substantially more skilled (SVP of 7) than the job of medical clerk ("Hospital Admitting Clerk") with an SVP of 4, that both jobs fall within the Medical Services industry per the DOT, that the DOT job descriptions identify some overlapping duties as discussed above

(communication with patients and recording information), and that the VE testified as to skills that would transfer between the jobs (though not a model of specificity), on balance the Court concludes that the ALJ's step five finding was supported by substantial evidence.

### VI. Order

For the reasons stated above, the Court finds that substantial evidence and applicable law support the ALJ's conclusion that Plaintiff was not disabled. Accordingly, Plaintiff's appeal from the administrative decision of the Commissioner of Social Security is denied. The Clerk of Court is directed to enter judgment in favor of Defendant Kilolo Kijakazi, acting Commissioner of Social Security, and against Plaintiff Shelley Ann Sanguras.

IT IS SO ORDERED.

Dated: **June 22, 2023**          **/s/ Gary S. Austin**
                                  UNITED STATES MAGISTRATE JUDGE